IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

JADE K.,
*Appellant*,

*v.*

LORAINE K. AND A.K.,
*Appellees*.

No. 2 CA-JV 2016-0067
Filed September 16, 2016

Appeal from the Superior Court in Pima County
No. S20150113
The Honorable Wayne E. Yehling, Judge Pro Tempore

**REVERSED**

COUNSEL

Sarah Michèle Martin, Tucson
*Counsel for Appellant*

Nuccio & Shirly, P.C., Tucson
By Jeanne Shirly
*Counsel for Appellee Loraine K.*

**OPINION**

Judge Staring authored the opinion of the Court, in which Presiding
Judge Howard and Judge Espinosa concurred.

S T A R I N G, Judge:

**¶1** Jade K. appeals from the juvenile court's order terminating his parental rights to his eight-year-old daughter, A.K., pursuant to a private petition filed by her mother, Loraine K. For the following reasons, we reverse the termination order.

## Background

**¶2** On review of a termination order, we view the evidence in the light most favorable to sustaining the juvenile court's decision. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, ¶ 18, 219 P.3d 296, 303 (App. 2009). As set out in the court's detailed order, Jade and Loraine were divorced in October 2011. Loraine subsequently remarried in 2015. Although no permanent parenting-time order had been entered in Jade and Loraine's divorce proceedings, they were awarded temporary joint legal custody of A.K., with an understanding that Jade would have unsupervised parenting time with A.K. on most weekends, from Thursday until Sunday. The parents adhered to this arrangement through July 2014.

**¶3** The arrangement changed, however, after July 31, 2014, less than two months before A.K.'s seventh birthday. The juvenile court explained that "[o]n that day [Jade], who lived in an apartment complex on Golf Links Road in Tucson, was exercising parenting time with [A.K.]," who went outside the apartment to play. According to the court's ruling, Jade "assumed" A.K. would "be supervised by other adults" living nearby. A.K. then wandered from Jade's apartment near the back of the complex to a grassy area in front of it, adjacent to the street. While there, she found and ate some wild mushrooms and became ill as a result. After calling a poison control hotline, and "upon their recommendation," Jade took A.K. to a hospital where she was treated and released.

**¶4** In June 2015, Loraine filed a petition to terminate Jade's parental rights, alleging grounds of abandonment and neglect. According to the juvenile court, family court proceedings—including Loraine's July 2015 notice of intent to relocate A.K. and Jade's August 2015 request to enforce parenting time—were deferred pending resolution of Loraine's termination petition. Since October 2015, Loraine and A.K. have been living in North Carolina, where Loraine's husband is stationed in the military. Loraine

testified her husband was "very much looking forward to" adopting A.K. "if this severance goes through."

**¶5**　　　　After a hearing that spanned five sessions occurring over a period of approximately two months, the juvenile court granted the petition, finding "by clear and convincing evidence that the events of July 31, 2014, constituted an act of neglect on [Jade's] part" and, by a preponderance of the evidence, that termination of Jade's parental rights was in A.K.'s best interests. The court made clear, however, its finding that Loraine "ha[d] not proven by clear and convincing evidence any other act of neglect on [Jade's] part." Similarly, the court found Loraine "ha[d] not proven by the heightened standard of clear and convincing evidence that [Jade] has abandoned" A.K. This appeal followed.

## Discussion

**¶6**　　　　We review a juvenile court's termination order for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, ¶ 9, 344 P.3d 842, 844 (App. 2015). Although "[p]arents possess a fundamental liberty interest in the care, custody, and management of their children[,]" "parental rights are not absolute[,]" and a court may terminate a parent's rights if it finds clear and convincing evidence[1] of one of the statutory grounds for severance and finds by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶¶ 24, 41, 110 P.3d 1013, 1018, 1022 (2005); A.R.S. §§ 8-533(B), 8-537(B). "[W]e will affirm a termination order that is supported by reasonable evidence." *Jordan C.*, 223 Ariz. 86, ¶ 18, 219 P.3d at 303. That is, we will not reverse a termination order for insufficient evidence unless,

---

[1]"The clear and convincing standard is reserved for cases where substantial interests at stake require an extra measure of confidence by the factfinders in the correctness of their judgment, though not to such degree as is required to convict of crime." *State v. Renforth*, 155 Ariz. 385, 387, 746 P.2d 1315, 1317 (App. 1987). "[A] party who has the burden of proof by clear and convincing evidence must persuade the [fact-finder] that his or her claim is highly probable." *Id*. at 388, 746 P.2d at 1318.

as a matter of law, no reasonable fact-finder could have found the evidence satisfied the applicable burden of proof. *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, ¶ 10, 210 P.3d 1263, 1266 (App. 2009).

**¶7** Section 8-533(B)(2) provides, as a ground for termination, a finding "[t]hat the parent has neglected or wilfully abused a child." Relevant here, the definition of "neglect" includes "[t]he inability or unwillingness of a parent . . . of a child to provide that child with supervision . . . if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).[2] In determining the events of July 31 constituted an act of neglect by Jade, the juvenile court found he "had a duty to supervise [A.K.] after she left the apartment that day . . . and did not follow up on his apparently baseless assumption that other adults would be available to supervise her." The court further found Jade's "failure to supervise [A.K.] created an unreasonable foreseeable risk to her health and welfare as manifested by her ingesting poisonous mushrooms and becoming sick as a result."

**¶8** On appeal, Jade argues the juvenile court's determination that he "has neglected . . . a child" pursuant to § 8-533(B)(2) is "clearly erroneous" and "wholly unsupported by the evidence."[3] He does not dispute that, while A.K. was unsupervised on July 31, she ingested wild mushrooms and became ill as a result. Instead, although he concedes "there are certainly instances in which a single act of abuse or neglect may be sufficient to justify

---

[2]We cite to the current version of the statute. No revisions material to this decision have been enacted since entry of the juvenile court's ruling.

[3]Jade also argues the juvenile court erred in finding termination of his parental rights is in A.K.'s best interests. Because we conclude the evidence was insufficient to support the court's finding Jade "has neglected" A.K., § 8-533(B)(2), we need not address this argument.

termination of a parent's rights," Jade maintains "this is not such an instance."[4]

**¶9** We agree the evidence relating to A.K.'s unsupervised play and ingestion of mushrooms on July 31 is insufficient to support termination of Jade's parental rights on the ground of neglect. The juvenile court's ruling expressly excluded other evidence of neglect as insufficient, and we defer to that determination, in light of that court's superior ability to judge the credibility of witnesses and to resolve disputed facts. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, ¶ 4, 100 P.3d 943, 945 (App. 2004). But we conclude the record lacks clear and convincing evidence sufficient to support termination of Jade's parental rights based on the July 31 incident.

**Statutory Construction**

**¶10** In its termination order, the juvenile court identified, as a relevant "legal question," "whether a single, albeit significant, act of neglect can constitute grounds for termination" under § 8-533(B)(2). Noting that the statute's plain language permits termination based on a finding that "the parent has neglected . . . a child," *id.*, the court concluded nothing in that subsection or in the definition of neglect in § 8-201(25) "allows the Court to read into those statutes a requirement that the alleged neglect be persistent or involve more than one act or omission." "Nor," the court continued, may it "read into the statute a requirement that it find that the

---

[4]In her answering brief, Loraine has not challenged the juvenile court's ruling that she failed to prove the statutory ground of abandonment, *see* § 8-533(B)(1); nor has she argued the court erred in finding she failed to provide clear and convincing evidence of any other instance of neglect on Jade's part. Neither has she filed a cross-appeal on these issues. Instead, she argues only that the court's termination order is supported by the facts and relevant law. Accordingly, we likewise limit our review to the terms of the court's decision, and we consider only the court's determination that Jade's failure to supervise A.K. on July 31 provided a sufficient basis for termination.

neglect is likely to be repeated or that the parent has failed to engage in services to prevent the neglect from occurring in the future." Accordingly, the court concluded "that a single act of neglect may constitute grounds for termination."

**¶11**     We appreciate the juvenile court's acknowledgment, reflected in its citation to *E.R. v. Department of Child Safety*, 237 Ariz. 56, ¶ 10, 344 P.3d 842, 845 (App. 2015), that "[i]f a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation, unless doing so would lead to impossible or absurd results."   Here, however, we conclude the evidence was insufficient to support the required finding that A.K.'s lack of supervision on July 31 was caused by Jade's "inability or unwillingness," § 8-201(25), to provide it.   Our conclusion is informed not only by the language of the relevant statutes, but by our recognition that a termination petition seeks "not merely to infringe [a parent's] fundamental liberty interest, but to end it," by way of "a judicial determination that the parent[ is] unfit to raise [his] own children." *Santosky v. Kramer*, 455 U.S. 745, 758, 760 (1982); *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 116 n.8 (1996) (recognizing "official decree extinguishing" parent-child relationship is "challenged state action" in both state-initiated and private termination proceedings); *Kent K.*, 210 Ariz. 279, ¶ 28, 110 P.3d at 1019 (recognizing holding in *Santosky* that parental rights may be severed "only by establishing the grounds for parental unfitness by at least clear and convincing evidence").

**¶12**     As noted above, § 8-201(25) defines neglect as a parent's "inability or unwillingness" to provide a child with supervision, when "that inability or unwillingness causes [an] unreasonable risk of harm to the child's health or welfare."   But in the context of neglect alleged in a termination petition, a parent's inability or unwillingness to provide supervision must be such that it can fairly be shown, by clear and convincing evidence, to render him "unfit to be a parent," *M.L.B.*, 519 U.S. at 121. *See also Santosky*, 455 U.S. at 760 n.10 (expressing doubt that state "constitutionally could terminate a parent's rights without showing parental unfitness"); *cf. In re Maricopa Cty. Juv. Action No. JS-7359*, 159 Ariz. 232, 236, 766 P.2d 105, 109 (App. 1988) (noting Arizona termination "statutes incorporate a

concept of parental unfitness," such that mother's "refusal to remedy the situation that made out-of-home placement necessary is a reflection on her fitness as a parent" warranting termination on time-in-care grounds).[5]

**The Evidence**

**¶13**      As our supreme court has explained, when determining the existence of one of the enumerated grounds for termination, "the focus is solely on the parent" and the "[u]se of a heightened standard of proof" at that stage of the termination proceeding "recognizes the severe consequence of an erroneous determination of unfitness:   Error at this stage could lead to permanently extinguishing the relationship between a fit parent and his or her child."[6] *Kent K.*, 210 Ariz. 279, ¶ 36, 110 P.3d at 1020-21.  But, based

---

[5]While declining to establish a hard and fast rule, we are inclined to agree with courts of other states that an isolated instance of a parent's failure to supervise rarely would justify termination of parental rights.  *See, e.g., In re C.A.B.*, 289 S.W.3d 874, 882-83 (Tex. App. 2009) (termination on statutory ground that parent "engaged in conduct" that endangered child "must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required"); *In re K.L.S.*, 94 P.3d 1025, 1029 (Wyo. 2004) ("Rarely do we find a single condition or incident standing alone justifies termination.  Instead, neglect is usually manifested by numerous incidents and conditions extending over a considerable length of time."); *see also Santosky*, 455 U.S. at 753 ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents . . . .").

[6]In *Kent K.*, our supreme court concluded the two inquiries in Arizona's statutory scheme—which require a court to find an enumerated statutory ground for termination and to "also consider a child's best interest," § 8-533(B)—"are comparable to the separate fact-finding and dispositional hearings conducted under the New York statute" considered in *Santosky.  Kent K.*, 210 Ariz. 279, ¶¶ 7, 27, 32, 110 P.3d at 1015-16, 1019-20.

on our review, the evidence adduced at the termination hearing about the events of July 31 was not focused on Jade or his conduct as a parent, but instead on the unfortunate fact that A.K., while unsupervised on one discrete occasion, ingested wild mushrooms near a busy street.

¶14        During the hearing, Jade was questioned about how ill A.K. had become after ingesting the mushrooms, her after-treatment, and whether he had ever before taken her to a hospital emergency room. When asked, Jade agreed A.K. had not previously been "injured in [his] care at all other than normal bumps and bruises that a kid gets."[7]

¶15        Much of the testimony elicited from Jade concerned Loraine's other allegations, including his understanding of the couple's divorce decree, his finances and current living situation, his efforts to communicate with A.K. after Loraine had denied him unsupervised parenting time, and his past conduct in bringing A.K. to his pool tournaments.

¶16        But Jade was never questioned about how A.K. came to be unsupervised on July 31, or why he had thought she was playing just below his apartment under adult supervision. The circumstances surrounding Jade's decision to allow A.K. to play outside that day are critical to a determination of whether that decision reflected his "inability or unwillingness" to provide her with supervision, § 8-201(25)(a), such that he was an unfit parent. For example, did he know or have reason to believe one or more reliable adults were supervising other children playing just below his apartment that day? Was there, by agreement or custom, an understanding that neighboring parents would look out for each other's children, as well as their own? Jade simply was never asked why he had assumed A.K. was safe, nor was any other evidence received on the issue.

---

[7]When asked, Loraine also responded that A.K. had never been injured "other than the mushroom incident."

¶17 Loraine testified only that, as A.K. was being released from the hospital, Jade told her A.K. had been "downstairs playing with other children [while] he was upstairs in his apartment" and had returned home ill. According to Loraine, Jade later said he had not known A.K. was at the front of the complex and "thought she was playing in the grass directly beneath the apartment."

¶18 The only other testimony regarding Jade's failure to supervise A.K. that day was from Heather Armstrong, the social worker who prepared the social study report required by A.R.S. § 8-536. She opined that Jade had neglected A.K. by allowing her to "play[] outside an apartment, if supervised at all, very loosely." She said Jade "just indicated he believed other adult individuals had been watching her" while he and his girlfriend were in the apartment cooking dinner.[8]

¶19 According to the social study report admitted into evidence, Jade told Armstrong he "often let [A.K.] play outside the apartment supervised by various other adults in the apartment complex" during his parenting time. But she found it "extremely neglectful and dangerous that [A.K.] was outside unsupervised . . . and as a result she ingested mushrooms that could have been poisonous." She wrote, "[T]his consultant questions how well [Jade] knew the various other individuals [who] were supposedly watching his daughter and wonders what other dangerous situations could have potentially arisen." When asked whether she believed the single incident was "enough neglect to warrant

---

[8]Armstrong noted Jade's statement that he had warned A.K. not to eat mushrooms seen growing at the complex, which she characterized as evidence of his neglect, stating, "He still allowed her to be unsupervised . . . in a community where he had no vision, no sight of her, [and] indicated that people that were supposed to be watching her, [and she had strayed to an area] next to a busy street, and she ingested mushrooms." Although we appreciate that Jade's warning to A.K. evinces his awareness of the mushrooms, depending on the particular child, a parent reasonably might expect a child near the age of seven to understand and heed such a warning.

termination of parental rights by clear and convincing evidence," she responded, "I do."

**¶20** We emphasize this is not a matter involving the resolution of disputed testimony or a credibility determination, both of which require this court's deference to the juvenile court. *See Oscar O.*, 209 Ariz. 332, ¶ 4, 100 P.3d at 945. Rather, we find no record support for the court's finding that Jade had relied on an "apparently baseless assumption" that A.K. was being provided with adult supervision that afternoon, or for its related determination that neglect had been shown by clear and convincing evidence. The speculative musings of a social worker, in "wonder[ing]" about the reliability of adults who may have been supervising A.K. that day, were not evidence, let alone the clear and convincing evidence required to terminate parental rights. *See In re Maricopa Cty., Juv. Action No. JS-378*, 21 Ariz. App. 202, 206, 517 P.2d 1095, 1099 (1974) (stating "the severance of the natural ties of birth should not be undertaken upon mere inferences which are not reasonably supported by the evidence").

## Disposition

**¶21** The juvenile court's ruling terminating Jade's parental rights to his daughter A.K., based on its finding of a single act of neglect arising from A.K.'s lack of supervision on July 31, 2014, was not supported by clear and convincing evidence. *See Denise R.*, 221 Ariz. 92, ¶ 10, 210 P.3d at 1266. Accordingly, we reverse.