NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DONOVAN L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.L, D.L., *Appellee*.

No. 1 CA-JV 16-0435
FILED 4-13-2017

Appeal from the Superior Court in Yavapai County
No. P1300JD201400069
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

_____

## MEMORANDUM DECISION

_____

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

_____

**C A T T A N I**, Judge:

**¶1**        Donovan L. ("Father") appeals the superior court's termination of his parental rights to his children M.L. and D.L.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        M.L. and D.L. are the biological children of Father and Julia C. ("Mother").  M.L. was born in January 2013, and D.L. was born in April 2014.  Mother has a child from a previous relationship, B.L. (born September 2010), who lived with Father and Mother.[1]

**¶3**        In September 2014, the Department of Child Safety ("DCS") received a report that B.L. and M.L. had been found wandering outside with no clothes on.  This was the third time in seven months that something similar had happened.

**¶4**        A DCS case worker went to the home of the children's maternal grandfather, where Mother and Father intermittently resided.  Father told the case worker that Mother was sleeping and the children were not at home.  The case worker told Father that she needed to talk to Mother, and Father went to let her know.  Mother came to the door and insisted that the children were not home.  She became extremely agitated, and the case worker called for law enforcement backup.

**¶5**        While the case worker was on the phone with law enforcement, Father retrieved M.L. from the residence and attempted to leave with him.  The case worker attempted to stop him, but Father insisted that he could take M.L. wherever he wanted.  Yavapai County Sheriff's Office ("YCSO") deputies arrived before Father could leave and

_____

[1]        The court also terminated Mother's parental rights to B.L., M.L, and D.L., but Mother is not a party to this appeal.

interviewed Father, Mother, and the maternal grandfather. Father then left, saying he would not speak with DCS.

¶6        The case worker entered the home and noted a significant odor of urine and fecal matter. All three children were in the home. M.L and B.L. were covered in bug bites, and the case worker observed the children playing on the floor, which was covered in urine stains, flies, and dog feces. At one point, the case worker saw B.L. playing with a real sword, which she took away and placed on a counter out of his reach. While the case worker interviewed Mother, B.L. also found an unidentified bottle of pills, and thereafter found a bottle of liquid antacid.

¶7        DCS removed the children from the home and placed them in foster care. When the children were removed, B.L. and M.L.'s feet bottoms were black; D.L. had cradle cap, and he had not been seen by a doctor since his birth. None of the children had been immunized.

¶8        Shortly after the children were removed, DCS filed a dependency petition alleging that Father was neglecting M.L. and D.L. by allowing them to remain in the unsanitary conditions present at their maternal grandfather's home. Although Father denied the allegations in the petition, the superior court found M.L and D.L. dependent as to Father in October 2014.

¶9        DCS referred Father for several services, including anger management, counseling, domestic-violence education, parent-aide services, parenting classes, and a psychological evaluation. By the end of 2015, DCS had requested that all three children be returned to Mother and Father. The court granted these requests and on DCS's motion, the court terminated the dependencies as to M.L. and D.L. in March 2016.

¶10        The next month, YCSO received a call that D.L. had been found alone on the road outside his maternal grandfather's home. When the person who found D.L. initially tried to return him to the home, no one answered. Eventually, the maternal grandfather came out of the home and took D.L. inside. A responding deputy interviewed Mother and Father. Mother said that she had been at the grocery store at the time of the incident. Father said that D.L. had left the house while he was in the shower. Father stated that he had locked and chained all the doors, but forgot to slide the pet door shut. The deputy informed DCS of the incident.

¶11        A month and a half later, a YCSO deputy responded to a report that M.L. and D.L were in the street around the corner from their maternal grandfather's home wearing nothing but diapers. When the

deputy arrived, Mother had found the children and was walking back toward the home with them. Mother told the deputy that the children had gotten out while she was asleep, after Father and grandfather had left for work. Father arrived and blamed the boys' grandfather for their escape, because he had apparently placed a couch close enough to the front door that the boys could use it to reach the locks. Because she had repeatedly let the children leave her care, YCSO officers arrested Mother for child abuse. She was indicted on two counts of child abuse soon thereafter.

¶12        DCS filed a second dependency petition, alleging that Father had neglected M.L. and D.L. by failing to protect them. DCS then moved to terminate Father's parental rights, alleging neglect and, in an amended motion, prior removal as grounds for termination. Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2), (11).[2] Father consented to a "paper trial." He included a written statement to the court with his trial exhibits.

¶13        The superior court found both grounds supported severance and that severance was in the children's best interests. Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶14        The superior court may terminate the parent–child relationship if it finds at least one ground for termination by clear and convincing evidence and finds by a preponderance of the evidence that termination will be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). When reviewing a termination order, we view the evidence "in the light most favorable to sustaining the court's decision." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). Because the superior court is in the best position to weigh the evidence, we defer to its factual findings and will affirm unless the order is clearly erroneous. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

¶15        Under A.R.S. § 8-533(B)(2), the parent–child relationship can be terminated if the parent has neglected a child, including "situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." As relevant here, neglect means "[t]he inability or unwillingness of a parent . . . of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or

---

[2]        Absent material revisions after the relevant date, we cite a statute's current version.

unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

**¶16**       Relying on *Jade K. v. Loraine K.*, 240 Ariz. 414 (App. 2016), Father argues that the evidence presented was insufficient to establish that he was unable or unwilling to provide sufficient care to his children, given that he was only responsible for supervising the children during one of the five incidents in which YCSO was called to the family's home. In *Jade K.*, a father's parental rights were severed based on a single incident during which his daughter ingested wild mushrooms while playing unsupervised outside his apartment. *Id.* at 417–19, ¶¶ 13–20. This court reversed, holding that the superior court had erroneously focused on the injury that the child suffered, rather than on the father's conduct that may have contributed to the injury. *Id.* at 417–18, ¶ 13; *see also Kent K.*, 210 Ariz. at 287, ¶ 36 (noting that when assessing grounds for termination, "the focus is solely upon the parent").

**¶17**       Despite Father's assertion to the contrary, his rights were not severed based solely on the April 2016 incident, when he was responsible for supervising the children. The court's ruling also referred to the incident in September 2014 when both B.L. and M.L left the home and the May 2016 incident when M.L. and D.L. left the home while under Mother's care. Although the April 2016 incident was the only time that the children left the home while solely in Father's care, it was not the sole basis for the termination of Father's rights.

**¶18**       Reasonable evidence supports the court's finding that Father failed to protect his children from neglect, including by leaving them in Mother's care. Father's statement to the court suggested that the incidents of neglect during which Mother failed to adequately supervise the children were "bad luck." And he blamed his father-in-law for at least one of these instances. But the court could reasonably conclude that Father knew or should have known that M.L. and D.L. were being neglected, and that he was unable or unwilling to prevent future harm to his children. *See* A.R.S. §§ 8-201(25)(a), -533(B)(2).[3]

---

[3]       Because we affirm on the neglect ground, we need not address the alternative ground of prior removal. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002). Father does not challenge the court's determination that severance was in the best interests of the children.

**CONCLUSION**

¶19 For the foregoing reasons, we affirm the superior court's order terminating Father's rights as to M.L. and D.L.



AMY M. WOOD • Clerk of the Court
FILED: AA