NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JAMES H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.H. *Appellees*.

No. 1 CA-JV 17-0412
FILED 4-3-2018

Appeal from the Superior Court in Maricopa County
No.  JD 31943
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee, Department of Child Safety*

## MEMORANDUM DECISION

Judge Patricia A. Orozco[1] delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Maria Elena Cruz joined.

**O R O Z C O**, Judge:

¶1 Father James H. appeals the superior court's order terminating his parental rights to his child. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 James H. is the Father of L.H., who was born in October 2012. In January 2016, L.H. was removed from Mother's custody after the Arizona Department of Child Safety (DCS) received a report alleging Mother had a substance abuse problem and was being evicted from her residence. DCS then filed a dependency petition against both Father and Mother, alleging, among other things, that both of them had neglected L.H. due to their substance-abuse problems. The superior court found L.H. dependent as to both parents.

¶3 In May 2017, DCS filed a motion to terminate the parental rights of both parents. As grounds for termination as to Father, DCS explained that Father had agreed to relinquish his rights to L.H. and would be signing a "Consent to Place a Child for Adoption." During a subsequent pretrial conference that Father attended telephonically, DCS informed the court that Father "ha[d] executed the consent." Mother, on the other hand, said she intended to contest the termination petition.

¶4 At the time of trial, L.H. was residing in an adoptive placement with Father's parents in Oregon, and the DCS supervisor assigned to L.H.'s case testified that Father's parents were meeting all of L.H.'s needs. After the trial concluded, the court terminated Father's parental rights to L.H, based on his consent. The court did not, however,

---

[1] The Honorable Patricia A. Orozco, retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

terminate Mother's rights. Father timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 8-235(A).

## DISCUSSION

¶5        Father argues that "the trial court erred by not weighing the best interest of the child in terminating [his] rights when Mother's rights were not terminated." He further claims DCS "showed no credible evidence that the child would benefit from the severance of just the father." We disagree.

¶6        On appeal, "[w]e view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). Because "[t]he juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation and internal quotation marks omitted).

¶7        To terminate a parent's rights to their child, the State must prove by clear and convincing evidence one of the statutory grounds for severance, and must also establish by a preponderance of the evidence that termination of the parent's rights is in the child's best interests. *See Jade K. v. Loraine K.*, 240 Ariz. 414, 416, ¶ 6 (App. 2016). "To establish that severance of a parent's rights would be in a child's best interests, the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by a continuation of the parental relationship." *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288, ¶ 26 (App. 2011) (citation and internal quotation marks omitted). In making that determination, the court may consider whether an adoptive plan exists for the child "or even that a child is adoptable." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004).

¶8        Father does not dispute the court's finding that, based on his consent, a statutory ground existed to sever his parental rights. *See* A.R.S. 8-533(B)(7) (noting that one of the grounds that "justify the termination of the parent-child relationship" is that "the parents have relinquished their rights to a child to an agency or have consented to the adoption."). He claims, instead, "[t]he trial court erred in finding that the termination was in [L.H.'s] best interest."

¶9        In its best-interests analysis the court found that Father had "a history of domestic violence with Mother and substance abuse." It added that "[t]he last information [DCS] ha[d] concerning his substance abuse was as of March 2016, when [DCS] learned that Father's struggle with substance abuse ha[d] continued and that he had relapsed." The court noted that "[s]ince that date, Father ha[d] failed to provide the Department with any information," and had not completed any services offered by DCS. It explained that DCS "was of the understanding that Father was on probation but he failed to sign any releases to allow the Department to obtain information as to that probation," and that there was therefore "no evidence demonstrating that Father ha[d] resolved either his substance abuse or domestic violence issues, and any unsupervised contact with [L.H.] could thus place her in danger." The court also found, based on the testimony of the case manager, that L.H. was adoptable. As a result, the court concluded that DCS had established by a preponderance of the evidence that "[L.H.] would be harmed by continuation of the parental relationship and that termination of Father's parental rights [was] in the best interests of [L.H.]."

¶10       The court's findings were clearly supported by the testimony of the DCS supervisor assigned to the case, as well as by Mother's testimony at trial. Therefore, we find no error.

## CONCLUSION

¶11       We affirm the court's order terminating Father's parental rights over L.H.

