NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ABEL V.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.V., A.P.,
*Appellees.*

No. 1 CA-JV 19-0246
FILED 1-28-2020

Appeal from the Superior Court in Maricopa County
No. JD23891, JS19888
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

J O H N S E N, Judge:

¶1        Abel V. ("Father") appeals the superior court's order terminating his parental rights to his two daughters.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        The girls were born in February 2016 and June 2017 to S.P. ("Mother") and Father.[1]  Mother is not a party to this appeal.  Father has a history of violent behavior.  In 2016, while Father was babysitting an eight-month-old relative, the boy suffered a skull fracture and facial bruising and swelling.  Father admitted he was upset the boy had soiled his diaper and "aggressively" grabbed his face.

¶3        In January 2017, while Mother was pregnant with the younger daughter, Father and Mother had a physical altercation at Father's apartment.  Father broke mirrors, glasses and bottles, poured bleach on Mother's clothing and locked her in the apartment.  After Mother asked Father to leave, he lit some curtains on fire and threw them into the building while Mother was still inside.  Father pled guilty to child abuse and arson of an occupied structure and was sentenced to a total of ten years' imprisonment.  He has been incarcerated since late January 2017.

¶4        In July 2018, the Department of Child Safety ("DCS") removed the children from Mother's custody for various reasons.  The superior court found the children dependent as to Mother in August 2018 and as to Father the following month.

¶5        In January 2019, DCS petitioned the superior court to terminate Father's parental rights to the children, alleging the nature of his convictions proved he was unfit and also that the length of his felony

---

[1]        "On review of a termination order, we view the evidence in the light most favorable to sustaining the juvenile court's decision." *Jade K. v. Loraine K.*, 240 Ariz. 414, 415, ¶ 2 (App. 2016).

sentence would deprive the children of a normal home for a period of years. *See* Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4) (2020) (termination warranted if "parent is deprived of civil liberties due to the conviction of a felony if the felony of which that parent was convicted is of such nature as to prove the unfitness of that parent to have future custody and control of the child . . . or if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years").[2] After a hearing, the court found that the nature-of-felony ground had been proven and that severance would be in the children's best interests, and it severed Father's parental rights to the children.

**¶6** Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21 (2020) and 8-235(A) (2020).

## DISCUSSION

**¶7** "Although a parent's right to care, custody, and control of his or her children has long been recognized as fundamental, it is not absolute." *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 6 (App. 2005) (citations omitted). To justify terminating a parent's rights, the superior court must find, by clear and convincing evidence, the existence of at least one ground under § 8-533. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). It also must find by a preponderance of the evidence that termination is in the best interests of the child. *Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 87, ¶ 14 (2019).

**¶8** This court will affirm a termination order unless, as a matter of law, no reasonable fact-finder could have found that the evidence met the applicable burden of proof. *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10 (App. 2009). We review questions of law *de novo*. *Duff v. Lee*, 246 Ariz. 418, 423, ¶ 10 (App. 2019).

## A. Father's Visitation with the Children.

**¶9** Father argues the superior court erred in finding DCS provided him appropriate reunification services during the dependency because DCS disregarded a constitutional duty and a court order to provide him visits with the children.

---

[2] Absent material revision after the relevant date, we cite the current version of a statute or rule.

¶10        In addressing Father's argument, we first note that, by contrast to the mandate in § 8-533 that DCS provide reunification services when termination is sought on certain other grounds, the statute does not expressly require DCS to provide such services when it seeks termination based on the nature of a parent's felony conviction.  *Compare* A.R.S. § 8-533(B)(8) (out-of-home placement ground requires proof "the agency responsible for the care of the child *has made a diligent effort to provide appropriate reunification services*" (emphasis added)), *with* A.R.S. § 8-533(B)(4) (nature-of-felony ground only requires proof "parent is deprived of civil liberties due to the conviction of a felony if the felony of which that parent was convicted is of such nature as to prove the unfitness of that parent to have future custody and control of the child"); *see also* A.R.S. § 8-533(D) ("court shall consider the availability of reunification services to the parent and the participation of the parent in these services" when considering termination based on out-of-home placement pursuant to § 8-533(B)(8) or prior removal pursuant to § 8-533(B)(11)).

¶11        Father offers no legal authority for the proposition that § 8-533 requires DCS to provide reunification services when it seeks termination of a parent's rights based on the nature of a felony conviction. Instead, Father cites *Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198 (App. 2002), seemingly in support of his contention that he had a constitutional right to visits with his daughters during the dependency. *Cf. Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 & n.3 (App. 2005) (parent has constitutional right to reunification services when severance is sought based on mental illness or chronic substance abuse pursuant to § 8-533(B)(3)).  The facts of *Michael M.*, however, are unlike those present here; in that case, the superior court had refused to allow a father to see his daughter in the courthouse following a court proceeding even though none of the parties to the proceeding objected.  202 Ariz. at 199-200, ¶ 7.  In any event, we recognized in that case that the superior court "may properly restrict or terminate a parent's visitation" upon proof that visits would "endanger[] the child." *Id.* at 201, ¶ 11.

¶12        Here, after the superior court found the two girls dependent as to Father in September 2018, he asked that they be brought to visit him in prison, and the court ordered DCS to brief the issue.  The next month, DCS moved to suspend visitation between Father and the children, citing the opinion of a psychologist that the visits Father wanted would cause the children significant stress, endangering their mental or emotional health. On October 22, the court ruled that it would address DCS's motion at a November 29 hearing and "[i]n the meantime, Father's visits with the Children shall continue."  On December 3, the court granted DCS's motion

to suspend visitation based on its finding that visits "would seriously endanger the Children's emotional health."

¶13 On appeal, Father does not challenge the ruling of the superior court suspending visits as of December 3, 2018. Instead, he argues DCS violated the October 22 order to provide visits pending the December 3 ruling. After the court ruled on October 22, the record shows that DCS promptly arranged for the girls' paternal grandmother to take them to visit Father in November, but the grandmother was denied entry to the prison because she did not have the proper documents. The court addressed and heard argument on the visitation issue at the November 29 hearing, and four days later, it granted DCS's motion to suspend visits. Under the circumstances, DCS did not unreasonably fail to comply with the October 22 visitation order during the six weeks before the court ruled on December 3.

¶14 More broadly, Father argues the order suspending visitation did not "excuse the *year of visitation inactivity*," apparently referring to the year preceding the December 3, 2018, ruling. The record, however, belies Father's contention. He had been incarcerated since late January 2017, but DCS did not file the current dependency petition until July 2018.[3] Father does not show how DCS had any obligation to provide him with visits before the dependency commenced in July 2018. Although he asked for visitation immediately after the court found the girls dependent as to him on September 24, 2018, that request led the court to ask DCS to brief the issue, and ultimately resulted in the December 3 ruling suspending all visits. In sum, Father's contention that DCS impermissibly allowed a "*year of visitation inactivity*" simply is not supported by the record.

¶15 Father also argues he was prejudiced because "visitation over this year could have proved critical in this matter, demonstrating the bond between Father and the Children, clearly relevant to the best interests concern." But contrary to Father's contention, the court's best-interests finding – like its finding that DCS had proved a ground for termination – rested upon the detriment the children would suffer if the parent-child relationship continued, *not* on the absence of a bond or relationship between Father and the children.

---

[3] A previous dependency involving the older daughter, Mother and Father, filed in 2016, was dismissed in August 2017. Father testified that he had five or six visits with the children in 2017 while he was incarcerated.

¶16 In its ruling on the nature-of-felony ground, the court explained:

> Both felonies evidence a lack of self-control and a propensity to injure others when he is angry, even loved ones. Father could have killed the baby he abused. His arson of an apartment with Mother inside could have resulted in serious injury or death to her or others. Were the Children returned to Father upon his release from prison, they would be at similar risk of harm from him.

The court's best-interests finding rested on similar grounds. *See infra* ¶ 19. Because Father failed to show any prejudice resulted from the absence of visits, we reject this argument. *In re Marriage of Molloy*, 181 Ariz. 146, 150 (App. 1994) (reversal warranted only if "complaining party suffers prejudice as a result of the error").

**B.     Best Interests.**

¶17 Father next argues the superior court erred in finding termination was in the children's best interests because he "had a relationship with his Children," had made improvements in prison, intended to take parenting, domestic-violence and other classes, and could address any remaining problems upon his release from prison. "We will not disturb the juvenile court's determination unless reasonable evidence does not support its factual findings." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶18 "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or be harmed by the continuation of the relationship*." *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (emphasis added). In making its best-interests finding, the superior court must consider the "totality of the circumstances existing at the time of the severance determination." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

¶19 Ruling on best interests, the court found:

> [C]ontinuing the legal parental relationship would be detrimental to the Children. Father's crimes are of such a nature that he would be a danger to the Children if reunited with them following his release from incarceration. . . .

[C]ontinuing Father's legal parental relationship with the Children risks exposing them to continued domestic violence upon his release from prison if the Children are ultimately returned to Mother.

**¶20** The ample evidence of Father's violent history and domestic violence supported the court's findings. According to the record, he fractured the skull of an infant relative and poured bleach on Mother's clothing, locked her inside and started a fire while she was pregnant with his younger daughter. *See supra* ¶¶ 2-3. Although a bond between the parent and child is one of the factors the court should consider, Father's purported relationship with the children is not dispositive of the best-interests issue. *See Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016). And although Father cites other factors he argues should bear on the best-interests inquiry, this court does not reweigh evidence on appeal. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).

## CONCLUSION

**¶21** For the foregoing reasons, we affirm the superior court's termination order.



AMY M. WOOD • Clerk of the Court
FILED: AA