NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

EBONEY H.,
*Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, M.H., R.S.,
*Appellees*.

No. 1 CA-JV 20-0035
FILED 8-20-2020

Appeal from the Superior Court in Maricopa County
No. JD531512
The Honorable Kristin Culbertson, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Paul J. McMurdie joined.

---

**M O R S E**, Judge:

¶1  Eboney H. ("Mother") appeals from the juvenile court's order terminating her parental rights. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2  Mother and Omar S. ("Father")[1] are the biological parents of M.H., born in 2016, and R.S., born in 2018. In February 2018, Mother and Father were shot and sustained non-life-threatening injuries in a drive-by shooting. M.H. was with his parents during the incident and sustained shrapnel wounds to his foot. All three were hospitalized and released the same day. Because Mother and Father were homeless, the Department of Child Safety ("DCS") implemented a safety plan for M.H. Once released from the hospital, M.H. was placed with his paternal aunt. When the paternal aunt violated the safety plan, M.H. was placed in the home of non-relative foster parents.

¶3  In May 2018, Mother gave birth to R.S. He was born premature and substance exposed to heroin and methamphetamine. While in the hospital after the birth, Mother tested positive for methamphetamine and opioids. She admitted that she used heroin four times a day while pregnant with R.S. DCS took custody of R.S. and placed him with the same non-relative foster parents as M.H.

¶4  In June 2019, the juvenile court found M.H. and R.S. dependent. Pursuant to the placement order, both children remained with the non-relative foster parents. Mother never objected to the placement order, but emailed DCS to suggest the children's maternal great grandfather and a family friend as potential foster parents. After a background check, the family friend was deemed unfit by DCS. The maternal great grandfather stated that while interested in the case, he was "not able to care

---

[1] Father's parental rights have been terminated and he is not a party to this appeal.

for the children." Thus, the children remained in the home of the non-relative foster parents for the duration of the proceedings.

¶5 Meanwhile, over the next eight months, Mother attended three supervised visits with her children, totaling six hours. After meeting her children's current placement at the third visit, she stated she was comfortable with her children being there and stopped attending visits. In February 2019, the juvenile court changed the case plan to severance and adoption. Afterwards, Mother tested positive for illegal drugs, failed to engage meaningfully in services, and on three separate occasions between May and September was arrested for possession of fentanyl.

¶6 At the severance trial, the DCS case manager testified to Mother's history of drug use and failure to engage in services. She also testified that M.H. was "thriving" in the current placement and that the "current placement is the only home and only parents [R.S.] has ever known." She likewise opined that the placement was meeting the children's needs, but that in the event something was to happen to the placement, the children were otherwise adoptable. Mother's counsel questioned the DCS case manager about Mother's request that the maternal great grandfather be considered as a placement. The case manager testified that DCS "look[ed] into him," but that "he was ruled out." However, she could not remember why, nor did she remember if Mother was ever given notice of that fact.

¶7 The juvenile court found that DCS had proven the severance grounds of chronic substance abuse and nine and fifteen months' out-of-home placement by clear and convincing evidence. The court also found severance was in the children's best interests, reasoning the children would benefit from the permanency of adoption and adoption was likely with the current placement. The court then terminated Mother's parental rights. She timely appeals and we have jurisdiction pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1), -2101(A)(1).

**DISCUSSION**

¶8 On appeal, Mother challenges the juvenile court's finding that termination was in the best interests of the children. Mother argues that, pursuant to A.R.S. § 8-514(B), DCS was required to establish that it made efforts to place the children with a family member and DCS failed to meet this burden at the severance hearing because the case manager could not remember why the maternal great grandfather was "ruled out." Therefore, the children's placement at the time of severance, resulted from "an

unjustified deviation from statutory placement preferences," and the juvenile court's best-interest finding based on that placement was "defective."

**¶9**      The court must determine by a preponderance of the evidence that termination of the relationship is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, 288 ¶¶ 22, 41 (2005). We review a severance order for an abuse of discretion. *Jade K. v. Loraine K.*, 240 Ariz. 414, 416, ¶ 6 (App. 2016). DCS urges waiver because Mother did not raise this argument below. *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 44, ¶ 19 n.3 (App. 2008) (noting the court of appeals does not consider arguments raised for the first time on appeal). Because Mother brought the maternal great grandfather to DCS's attention as a potential placement, and Mother's counsel raised the issue during cross-examination of the case manager at the severance hearing, we decline to find waiver.

**¶10**      Nevertheless, Mother's argument fails because § 8-514(B) is only relevant for the court to determine placement. *See Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 405, ¶ 12 (App. 2008) (holding court must consider statutory placement preferences when placement is at issue). The issue of placement was not before the court because the best interests for termination "is separate from and preliminary to its determination of placement after severance." *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370-71, ¶ 2 (App. 2009). Therefore, contrary to Mother's argument, "[t]o establish that severance [was] in the best interests of the child, the state [was] not required to rule out possible placements with biological relatives before considering other placements." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998). Nor was the juvenile court required to "weigh alternative placement possibilities to determine which might be better." *Id.* Accordingly, the court did not abuse its discretion in failing to consider the statutory placement preferences.

**¶11**      Mother does not otherwise challenge the court's best interests finding. Even so, the court's findings are supported by overwhelming evidence that the children had been together with the same foster parents for over nineteen months and both were "thriving" in their care. The court did not abuse its discretion.

**CONCLUSION**

¶12      For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA