NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CASSIE F., WARREN M.,
*Appellants*,

v.

DEPARTMENT OF CHILD SAFETY,
S.C., T.C., D.M., Z.M.,
*Appellees*.

No. 1 CA-JV 19-0174
FILED 9-10-2020

---

Appeal from the Superior Court in Mohave County
No.  B8015JD201704063
The Honorable Rick A. Williams, Judge

**AFFIRMED**

---

COUNSEL

Harris & Winger, PC, Flagstaff
By Chad Joshua Winger
*Counsel for Appellant Cassie F.*

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant Warren M.*

Arizona Attorney's General Office, Tucson
By Dawn Rachelle Williams
*Counsel for Appellee*

_____

## MEMORANDUM DECISION

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Paul J. McMurdie joined.

_____

**M O R S E**, Judge:

**¶1**        Cassie F. ("Mother") and Warren M. ("Father") appeal the termination of their parental rights to their children.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citation omitted).

**¶3**        This case involves X.M. and D.M., the children of Mother and Father, and S.C. and T.C., the children of Mother and Michael C.  In 2012, the Maine Office of Child and Family Services ("OCFS") investigated allegations that Michael C. and Mother had abused or neglected S.C. and T.C., and the two children were taken into the custody of the Maine Department of Health and Human Services.  Ultimately, Michael C.'s parental rights were terminated after it was determined he sexually abused S.C.  Mother's parental rights were not terminated, but OCFS found that she had severely neglected T.C. and emotionally abused S.C.  After OCFS's case, Mother was reunited with S.C. and T.C.  Though Father's rights were not at issue in the Maine investigation, OCFS noted that he also emotionally and physically abused S.C.

**¶4**        After S.C. and T.C. were reunited with Mother, the family moved to Arizona.  In November 2017, the Mohave County Sheriff's Office investigated a report that S.C. had been physically abused.  An Arizona Department of Child Safety ("DCS") safety specialist informed the Sheriff's Office that S.C. had stated that Father hit her and T.C. with a large metal spatula. S.C. also stated that Father would strike her on the back of the head to discipline her.  When law enforcement officials investigated the family's home, a camper located within a local park, Father denied that the family owned a metal spatula and Mother denied knowledge of any abuse.  However, law enforcement located the spatula just where S.C. said it would be.  DCS began its investigation, and the children were found dependent

and removed from Mother and Father's home on March 8, 2018. When the children were removed, X.M. and D.M.'s diapers were "saturated," and both children had rashes consistent with wearing soiled diapers for a prolonged period.

¶5        In its investigation, DCS discovered that S.C. had slept in a tent near the camper for seven to eight months, during which she was exposed to extreme heat without any immediate access to water. Neighbors saw S.C. wandering around the campground unsupervised, asking for food and water. Coyotes were known to roam the campground at night, but S.C. could not use the restroom in the camper and was forced to walk, unsupervised, half a block away to use a "Porta Potty."

¶6        Further investigation revealed that all four children were underfed and the family's camper was very small and lacked electricity and running water. The camper's air conditioner did not work and Father had expressed concerns that "the floor [was] weak" and someone could fall through. At the campground, the children were often left unsupervised outside for "extended periods" so that Mother and Father could sleep.

¶7        D.M. is developmentally delayed. During the children's dependency, Mother and Father resisted DCS's request that he be referred to an Arizona Early Intervention program to assist his development. This prompted DCS to file a motion to suspend the parents' special-education rights, which the juvenile court granted. In so ruling, the juvenile court found that the parents' refusal to allow D.M. access to special education was unreasonable and contrary to D.M.'s best interests.

¶8        On November 16, 2018, DCS moved to terminate Mother's and Father's parental rights based on abuse and neglect. Roughly one week before trial, Mother and Father informed DCS that they sold their camper and moved into a hotel that would provide more appropriate shelter for the children.

¶9        After a one-day trial, the juvenile court found that DCS had proven the statutory grounds and termination was in the children's best interests, and granted DCS's petition to terminate Mother's and Father's parent-child relationship with the children. Mother and Father timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

3

**DISCUSSION**

**¶10**        Father argues that DCS did not prove the statutory grounds justifying termination.  Separately, Mother argues that: (i) the juvenile court's factual findings were legally insufficient to establish neglect of the children; (ii) the juvenile court's factual findings were insufficient to establish abuse of T.C., D.M, or X.M.; (iii) A.R.S. § 8-533(B)(2) was unconstitutional as applied; and (iv) DCS was obligated to offer reunification services that were not provided.  Both parents also challenge the juvenile court's best-interests finding, with Father asserting that the court erred factually and Mother arguing the court erred as a matter of law. We begin with the arguments related to the statutory grounds for termination.

**I.        Statutory Grounds.**

**¶11**        To terminate a parent-child relationship, the juvenile court must find that clear and convincing evidence supports one of the statutory grounds for severance.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005); A.R.S. § 8-533(B).  We review a trial court's termination order for an abuse of discretion.  *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).  We accept the court's findings of fact unless no reasonable evidence supports them.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶12**        Termination of a parent-child relationship is justified when a parent "has neglected or wilfully abused a child."  A.R.S. § 8-533(B)(2).  The juvenile court found that DCS proved Father willfully abused a child, Mother failed to protect the children from abuse, and that both parents neglected all four children.  Mother and Father challenge these findings. We first address the statutory ground of neglect.

**¶13**        The juvenile court found that severance was justified because Mother and Father neglected their children.  "Neglect" is defined as "[t]he inability or unwillingness of a parent . . . to provide [their] child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare . . . ."  A.R.S. § 8-201(25).

**A.        Father's Alleged Neglect.**

**¶14**        Father argues the juvenile court erred because the evidence was insufficient to show he was unable or unwilling to provide necessities to the children.  As support, he points to his completion of a parenting plan,

his anger management and domestic violence counseling, and his efforts to find appropriate housing before the termination of his parental rights. But these efforts do not negate the evidence relied on by the juvenile court. Father does not dispute that, despite DCS informing him of housing programs, the children were forced to remain in unsafe housing for over half a year. Further, Father failed to provide his children with sufficient food. Father essentially argues that past neglect is irrelevant because he is now willing and able to care for his children, citing *Jade K. v. Loraine K.*, 240 Ariz. 414, 417, ¶ 12 (App. 2016). However, *Jade K.* does not support Father's position.

**¶15**       In *Jade K.*, a parent allowed their child to play outside unsupervised and the child ingested mushrooms that caused her to become ill. *Id.* at 415, ¶ 3. On appeal, the question was whether the parent's inability or unwillingness caused the child's lack of supervision. *Id.* at 417-18, ¶¶ 12, 16. Nothing in *Jade K.* suggests that the parent's ability or willingness at the time of the termination hearing is relevant. This is consistent with A.R.S. § 8-533(B)(2), which states that termination is justified if a parent "has neglected" a child. The past-tense verb "neglected" shows that it is a previous unwillingness or inability to provide for a child that justifies termination, not current circumstances. *See Jason R. v. Dep't of Child Safety*, 2 CA–JV 2018–0046, 2018 WL 2966878, *2, ¶ 9 (Ariz. App. 2018) ("As we determined in *Jade K. v. Loraine K.*, past neglect may serve as a basis for termination . . . .").

**¶16**       As with *Jade K.*, the question before us is whether reasonable evidence supports the juvenile court's conclusion that Father's failure to provide sufficient food and safe shelter to his children was caused by his inability or neglect, rendering him unfit to be a parent. *See Jade K.*, 240 Ariz. at 417, ¶ 12. We find that the record, *see supra* ¶¶ 3-7, 14, amply supports the juvenile court's conclusion, and affirm its finding that DCS proved the statutory ground of neglect as to Father.

### B.    Mother's Alleged Neglect.

**¶17**       Mother argues that the juvenile court's factual findings are legally insufficient for the statutory ground of neglect. Mother does not argue that "insufficient evidence supports the juvenile court's specific findings of fact," but argues those findings are insufficient to justify termination as a matter of law. Mother additionally claims that no evidence was presented to support a finding that there was an unreasonable risk of harm to her children and that, accordingly, the juvenile court failed to make any such finding. DCS asserts that Mother has waived any challenge to the

factual sufficiency of the juvenile court's order and that, in any case, the juvenile court's order is factually sufficient. Assuming this argument was not waived, *Francine C. v. Dep't of Child Safety*, 1 CA-JV 19-0366, 2020 WL 3422523, at *4-5, ¶¶ 14, 21 (Ariz. App. 2020), the juvenile court's order makes sufficient factual findings to support termination.

**¶18**     "We will review a juvenile court's termination order in the light most favorable to sustaining the court's decision[.]" *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10 (App. 2009). The termination order cites testimony from a DCS caseworker, who said the children often lacked sufficient food and that S.C. would go to neighbors asking for food and water. Relying on this evidence, the court found that Mother "failed to ensure [her] children ha[d] food[.]" Mother does not challenge this factual finding, and we therefore accept the juvenile court's factual findings regarding insufficient food as true. Standing alone, a parent's unwillingness or inability to provide food for their children is sufficient to justify termination, so long as that lack of food causes the children an unreasonable risk of harm to their health. *See* A.R.S. §§ 8-201(25) and 8-533(B)(2).

**¶19**     At the outset of its discussion on neglect, the court noted that DCS alleged Mother "caused an unreasonable risk of harm to [her] children's health or welfare . . . ." The court also found DCS had proven the statutory ground of neglect by clear and convincing evidence. We presume that the juvenile court knows and follows the law. *See State v. Williams*, 220 Ariz. 331, 334, ¶ 9 (App. 2008). Given that the juvenile court expressly noted an unreasonable risk of harm was alleged and found that DCS proved its case by clear and convincing evidence, we find that the juvenile court necessarily found that Mother's neglect caused an unreasonable risk of harm to her children.

**¶20**     As to Mother's argument that no evidence supported such a finding, we find that the fact the children "often lacked sufficient food" provides reasonable evidence to support the juvenile court's finding that Mother caused the children to suffer an unreasonable risk of harm to their health. It is difficult to imagine a scenario where a child who "often lacked sufficient food" did not face an unreasonable risk of harm to their health. Accordingly, we affirm the juvenile court's finding that the statutory ground of neglect was proven as to Mother.

### C. Statutory Ground of Abuse.

¶21 Mother and Father challenge the juvenile court's finding that termination of their parental rights was justified by the statutory ground of abuse, raising arguments based on the recent case *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224 (2020). Because we have affirmed the juvenile court's findings against Mother and Father on the statutory ground of neglect, we need not address arguments pertaining to the statutory ground of abuse. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (stating that when clear and convincing evidence supports any one of the statutory grounds for termination, it is unnecessary to address other grounds).

## II. Waiver of Mother's Other Challenges.

¶22 Mother argues that the juvenile court's application of A.R.S. § 8-533(B)(2) is unconstitutional. She also asks us to repudiate our decision in *E.R. v. Dep't of Child Safety*, 237 Ariz. 56 (App. 2015) (finding that A.R.S. § 8-533(B)(2) is not limited to cases involving serious physical or emotional injury) and challenges the adequacy of DCS's reunification efforts.[1] DCS argues that Mother has waived these arguments. We agree.

¶23 "We generally do not consider objections raised for the first time on appeal." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21 (App. 2007); *see also Trantor v. Fredrickson*, 179 Ariz. 299, 300 (1994) ("[A]bsent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal."). Mother notes that the waiver doctrine is not "an unalterable rule[,]" *Reid v. Reid*, 222 Ariz. 204, 208, ¶ 16 (App. 2009), and argues that application of the doctrine in this instance is inappropriate because the Arizona Rules of Procedure for the Juvenile Court "provide no post-verdict/trial procedure to challenge a termination order." But at the time of the termination hearing, Mother was aware of the services she had received from DCS and never challenged their adequacy. She was aware that DCS was not alleging that her neglect of the children caused them serious injury. And she was aware that A.R.S. § 8-533(B)(2) justifies termination based solely on her past actions. These facts form the foundation of Mother's various constitutional challenges, and we see no

---

[1] DCS challenges Mother's assertion that any reunification services were required. As we find the issue waived, we need not address these arguments.

reason why she could not have raised these arguments before the juvenile court.

¶24 Mother also argues that waiver is inappropriate because we review constitutional issues de novo. *See In re Andrew C.*, 215 Ariz. 366, 367, ¶ 6 (App. 2007). But the issue of waiver is distinct from the standard of review, and a party may undoubtedly waive challenges to the constitutionality of a statute. *See Romero v. Sw. Ambulance*, 211 Ariz. 200, 204, ¶ 7 (App. 2005) (holding that plaintiff waived constitutional challenges to a statute by failing to present those issues to the trial court). Accordingly, we find that Mother has waived her other challenges to A.R.S. § 8-533(B)(2) because she failed to raise these issues before the juvenile court.[2]

## III.    Best Interests.

¶25 Both Mother and Father challenge the juvenile court's best-interests finding. Terminating a parent-child relationship is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). Relevant factors in this determination include whether: (1) the current placement is meeting the child's needs, (2) an adoption plan is in place, and (3) the child is adoptable. *See id.* at 3-4, ¶ 12. Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). "The existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).

¶26 Moreover, "[i]n a best interests inquiry, . . . we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Kent K.*, 210 Ariz. at 286, ¶ 35; *see also Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988) ("In most cases, the presence of a statutory ground will have a negative effect on the children."). Once a juvenile court finds that a parent is unfit, the

---

[2] Mother does not ask this Court to review the juvenile court's decision for fundamental error. *See Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 447, ¶ 37 (2018) (noting court may review for fundamental error). Therefore, we do not address whether fundamental error review would be appropriate here.

focus shifts to the child's interests. *Kent K.,* 210 Ariz. at 285, ¶ 31. Thus, in considering best interests, the court must balance the unfit parent's "diluted" interest "against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. Of foremost concern in that regard is "protect[ing] a child's interest in stability and security." *Id.* at ¶ 34 (citing *Pima Cty. Juv. Severance Action No. S-114487,* 179 Ariz. 86, 101 (1994)).

¶27 In its best-interests finding, the juvenile court noted that, despite receiving services from two different state child welfare agencies for seven years, Mother and Father had "shown a consistent disregard for their children's safety and well-being." The court also noted that Mother and Father failed to "take reasonable and timely steps to maintain a safe, stable residence for their family." Additionally, all four children were adoptable: X.M. and D.M. resided with an adoptive placement, and S.C. and T.C.'s maternal grandmother expressed a willingness to adopt those children. In the final portion of its analysis, the court expressed concern that the children could be subjected to continued abuse and neglect if returned to Mother and Father. Based on these facts, the court found that termination of Mother's and Father's parental rights was in the children's best interests.

¶28 Father argues the juvenile court erred because it failed to consider his participation in services. This is untrue. The court noted that "[t]o Father's credit, he completed" two parenting classes and domestic violence counseling, but found that other evidence established that termination was in the children's best interests. *See supra* ¶ 27. "The appellate court's role is not to weigh the evidence." *State v. Fischer,* 242 Ariz. 44, 52, ¶ 28 (2017). Because reasonable evidence supports the juvenile court's finding that termination of Father's parental rights was in the children's best interests, we affirm that finding.

¶29 Finally, Mother asserts that the court erred when it considered the risk of abuse in the best-interests inquiry. *See Sandra R.,* 248 Ariz. at 230, ¶ 26 (holding that courts should determine the risk of harm to non-abused children during the statutory unfitness inquiry and not during the best-interests analysis). But given the totality of the juvenile court's findings, *see supra* ¶ 27, we find no error. *See Sandra R.,* 248 Ariz. at 231, ¶ 32 (affirming best interests finding when reasonable evidence supported that the "severance of parental rights will benefit the children because they require a home environment free of a heightened risk of abuse" and children were in adoptable home placements). Accordingly, we affirm the

juvenile court's determination that termination of Mother's parental rights was in the children's best-interests.

## CONCLUSION

¶30      For the reasons stated above, we affirm the juvenile court in all respects.

